UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| FONTRISE CHARLES, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | Case No. 1:13-mc-46 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

This is a proceeding brought under 26 U.S.C. § 7609(b)(2) to quash an administrative summons issued by a special agent of the Internal Revenue Service seeking access to petitioner's bank records at the PNC Bank in Grand Rapids, Michigan. The challenged administrative summons, dated May 14, 2013, and returnable June 7, 2013, sought access to specified records for any account in which petitioner, Fontrise Charles, has an interest. Petitioner, acting through counsel, filed a petition to quash on May 23, 2013. Respondent has filed a brief in opposition to the petition, supported by the declaration of Special Agent Rodney Urlaub of the Internal Revenue Service.

District Judge Robert Holmes Bell has referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B). I conducted a hearing on June 28, 2013, at which counsel for both parties appeared. Neither party sought to call witnesses or submit any other factual material in connection with the petition or response. For the reasons set forth below, I recommend that the petition to quash be denied.

**Proposed Findings of Fact**

The declaration of IRS Special Agent Rodney Urlaub (docket # 7-1) is the only factual material submitted by either party. The Urlaub declaration establishes that the IRS is investigating petitioner's possible involvement in a fraudulent income tax refund scheme. Computer analysis of suspicious tax returns showed that over 190 returns for the tax year 2011 had been filed electronically, using the same IP address. (Urlaub Decl. ¶ 2). Expanded computer analysis into the year 2012 showed that hundreds more tax returns for that year were submitted to the IRS electronically from the same computer, even though the returns were allegedly "self-prepared." These returns claimed, in the aggregate, a total of approximately $2 million in tax refunds for the two years in question. (*Id.*). The suspicious tax returns were accompanied by an attached Form 8888, which directs allocation of the refund into different bank accounts. Even though all the tax returns were allegedly self-prepared and therefore listed no return preparer, nearly all the returns directed the tax refund to be split and deposited into at least two different accounts. Several of the split refunds were electronically deposited into two bank accounts with routing numbers for PNC Bank. These deposits totaled approximately $133,000.00. (*Id.* at ¶ 3).

On April 14, 2013, Special Agent Urlaub issued an IRS summons pursuant to 26 U.S.C. § 7609(c)(2)(C) to PNC Bank, seeking identifying information for the account holder for one of the PNC accounts into which split refund payments had been deposited. (Urlaub Decl. ¶ 4). On April 5, 2013, the Bank responded to the summons by providing the name and record address of the account holder, petitioner Fontrise Lenee Charles, doing business as "1 Tax Lady." (*See* Summons and Response, docket # 7-2). On April 18, 2013, the Special Agent issued a second summons to PNC Bank for the second bank account into which refunds under investigation had been sent. This

summons also sought only account holder information. The Bank responded on April 22, 2013, again identifying petitioner Fontrise Charles as the account holder. (Summons and Response, docket # 7-3).

On May 14, 2013, Special Agent Urlaub issued the IRS summons challenged by petitioner in the present case. The summons sought account information for the two PNC bank accounts identified by the bank in response to the two previous summonses. The account information was limited to the period January 1, 2011 through May 13, 2013, the period during which allegedly fraudulent tax returns were either submitted or the refunds received. (Urlaub Decl. ¶ 8).

Petitioner filed the instant action on May 23, 2013. The petition appears to allege three grounds for relief: (1) the copy of the summons served on petitioner by the IRS agent did not contain an attachment; (2) the description of the records sought by the subpoena is "vague and too general;" (3) the Internal Revenue Service acquired information regarding petitioner's bank accounts in violation of 12 U.S.C. § 3402, the Right to Financial Privacy Act, and the summons is part of a scheme to obtain information in violation of that law. (Petition, ¶¶ 7, 9, 10, docket # 1).

The declaration of Special Agent Urlaub establishes the following facts relevant to the validity of the summons dated May 14, 2013:

- Special Agent Urlaub gave petitioner notice of the summons by sending her a copy by certified mail to her last known address on May 14, 2013, 25 days before the June 7, 2013 return date. Petitioner acknowledged receipt of the summons on May 17, 2013, by her signature on the certified mail return receipt. (Urlaub Decl. ¶ 9).

- No one contacted the Special Agent concerning the allegedly missing attachment at any time before the filing of the petition to quash. (*Id.* ¶ 10).

- The IRS has satisfied all administrative steps required by the Internal Revenue Code for the issuance of the summons. (*Id.* ¶ 11).

- The IRS has not made any referral or recommendation for criminal prosecution of petitioner to the Department of Justice. (*Id.* ¶ 13).

The foregoing facts are uncontradicted in the record.

## Discussion

### A.  Governing Principles

The authority to issue administrative summonses is part of the broad statutory charge to the Secretary of Treasury to inquire concerning "all persons . . . who may be liable to pay any Internal Revenue tax." 26 U.S.C. § 7601. This power of inquiry is part of a "positive duty" upon the Secretary to investigate and audit persons who may be liable for taxes. *See Donaldson v. United States*, 400 U.S. 517, 523 (1971). Probable cause is not necessary to support an administrative summons. The Secretary may investigate on mere suspicion that the law is being violated, or even because he or she wants assurance that it is not. *United States v. Powell*, 379 U.S. 48, 57 (1964). The validity or invalidity of the tax assessment is simply irrelevant to the issue of enforcement of the summons. *United States v. Mueller*, 930 F.2d 10, 12 (8th Cir. 1991).

The IRS may serve a summons upon the third-party record keeper such as a bank or other financial institution in order to obtain financial records or information regarding a person who is the subject of an investigation by the IRS. 26 U.S.C. § 7609(a). When the IRS serves a summons

on a third-party record keeper, the person whose records are the subject of the summons is entitled to notice that the summons has been served. *Id.*; *see Clay v. United States*, 199 F.3d 876, 878 (6th Cir. 1999). "Notice of the right to file a petition to quash is 'sufficient' if it is mailed by certified or registered mail to the last known address of the person entitled to notice." *Clay*, 199 F.3d at 878.

A person who is notified that a summons has been issued to a third-party record keeper may contest the summons by filing a petition to quash within twenty days of the date on which notice of the summons was mailed by certified or registered mail to him by the IRS. *See Shisler v. United States*, 199 F.3d 848, 850 (6th Cir. 1999). In the present case, it is undisputed that IRS Special Agent Urlaub gave petitioner the required notice and that she filed her petition within the time allowed by statute. 26 U.S.C. § 7609(b)(2).

When adjudicating petitions to quash an IRS summons, the court first determines whether the IRS has established a *prima facie* case for enforcement. *See Pragovich v. IRS*, 676 F. Supp. 2d 557, 564-65 (E.D. Mich. 2009). The United States establishes a *prima facie* case for enforcement of a summons by showing the following: (1) that the summons was issued for a legitimate purpose; (2) that the summoned data may be relevant to that purpose; (3) that the summoned information is not already in the government's possession; and (4) that all administrative steps required by the Internal Revenue Code have been followed. *Powell*, 379 U.S. at 57-58; *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997); *Kondik v. United States*, 81 F.3d 655, 656 (6th Cir. 1996). This *prima facie* case may be established by the sworn declaration of the Revenue Agent. *Kondik*, 81 F.3d at 656; *United States v. will*, 671 F.2d 963, 966 (6th Cir. 1982). After the United States has established a *prima facie* case, it is entitled to an enforcement order, unless the taxpayer bears the burden of showing that the IRS is attempting to abuse the court's process. *United*

*States v. Stuart*, 489 U.S. 353, 360 (1989); *2121 Arlington Heights Corp. v. Internal Revenue Serv.*, 109 F.3d 1221, 1224 (7th Cir. 1997). "This burden is a heavy one." *Kondik*, 81 F.3d at 656. Absent a specific showing to the contrary, a presumption of integrity and regularity exists regarding IRS investigations. *See McTaggart v. United States*, 570 F. Supp. 547, 549 (E.D. Mich. 1983); *see also Darland v. United States*, No. 4:96:MC:4, 1996 WL 4948430, at * 1 (W.D. Mich. Jan. 10, 1996).

    **B.**    ***Prima Facie* Case**

The evidence before the court establishes the existence of a *prima facie* case that the summons served on PNC Bank is valid. The IRS is presently engaged in an investigation concerning hundreds of allegedly fraudulent tax returns and refunds. This investigation is clearly a "legitimate purpose" for the issuance of a summons. The summoned data is relevant to that purpose. Petitioner argues that the scope of the summons was overly broad and therefore covers irrelevant information. This argument is not meritorious. Section 7602 authorizes the Secretary of the Treasury to summon and examine "any books, papers, records, or other data which may be relevant" to a particular tax inquiry. Relevancy, in this context, is a low standard and is not equivalent to admissibility under the Federal Rules of Evidence. Rather, the IRS may obtain items that have only potential relevance, without regard to their admissibility. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). The IRS now has information showing that numerous fraudulent refunds were directed into petitioner's PNC bank accounts. The IRS has summoned full information concerning those bank accounts and other accounts at the same bank. Certainly, the IRS should be able to trace the refunds into other bank accounts. Furthermore, the summoned information may lead to the identity of possible witnesses or co-conspirators or to the existence of accounts at other banks that may have

been used as part of the allegedly fraudulent scheme. The summoned information certainly has "potential relevance" to the ongoing investigation. *Arthur Young*, 465 U.S. at 814. The summons is limited in temporal scope, thus avoiding over-breadth problems. Petitioner has not rebutted this element of the *prima facie* case.

There is no indication in the record that the summoned information was already in the government's possession, and the affidavit of Special Agent Urlaub indicates that all administrative steps required by the Internal Revenue Code had been followed. Finally, there has been no formal referral of this matter for criminal prosecution to the Department of Justice.

In short, the Internal Revenue Service has established all elements of a *prima facie* case.

### C. Petitioner's Other Objections

Once the IRS establishes a *prima facie* case, petitioner has the burden of proving substantial and specific facts which establish an enforcement of the summons would be an abuse of the court's process. *See United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1444 (10th Cir. 1985). Petitioner has not done so.

Petitioner seeks to quash the petition on the ground that the attachment to the summons (which identified specific records to be produced) was not attached to the copy of the summonses served on her. (Pet. ¶ 7). As an initial matter, petitioner has not supported this allegation with any proof, so it stands unsupported in the record. More fundamentally, even assuming the truth of his allegation, such technical errors in the form of notice are grounds for quashing a summons only if they are prejudicial. *See Cook v. United States*, 104 F.3d 886, 889 (6th

Cir. 1997); *accord Adamowicz v. United States*, 531 F.3d 151, 161 (2d Cir. 2008). Petitioner has never alleged or proved any prejudice arising from this error. The declaration of Special Agent Urlaub avers that he would have promptly provided the attachment, had anyone contacted him. (¶ 10). Petitioner has therefore not established grounds for quashing the summons arising from a prejudicial defect in the notice. *See Cook*, 104 F.3d at 889-90.

The only other ground for relief alleged in the petition is that the Internal Revenue Service acquired information regarding petitioner's bank accounts in violation of 12 U.S.C. § 3402, the Right to Financial Privacy Act. (Pet. ¶¶ 9-10). At the hearing, counsel for petitioner indicated that the basis of this allegation was petitioner's skepticism concerning how the IRS determined that she was the owner of the PNC bank accounts involved herein. The Urlaub declaration clears up this gap in petitioner's understanding. Before issuing the May 14, 2013 summons, the IRS issued two summonses under 26 U.S.C. § 7609(c)(2)(C), which empowers the IRS to issue summonses, without notice to anyone, "solely to determine the identity of any person having a numbered account (or similar arrangement) with a bank or other institution." At the hearing, counsel briefly contended that the requirements for a "John Doe summons" set forth in section 7609(f) apply to such summonses, but he ultimately realized that this argument was not meritorious and withdrew it on the record. As a result, it is clear that no violation of either the Internal Revenue Code or the Right to Financial Privacy Act led to the identification of petitioner as the account holder. The Right to Financial Privacy Act explicitly excepts the disclosure of financial records that are obtained in accordance with procedures authorized by the Internal Revenue Code. 12 U.S.C. § 3413(c); *see McTaggart v. United States*, 570 F. Supp. 547, 550 (E.D. Mich. 1983). In this case, the IRS discovered petitioner's identity through the use of two summonses properly issued without notice under the provisions of

the Internal Revenue Code. The Right to Financial Privacy Act therefore does not apply to this or any other aspect of the present case.

## **Recommended Disposition**

The IRS has established a *prima facie* case in favor of the validity of its summons, and petitioner has not met her burden of showing that the summons was issued in violation of law or in bad faith. I therefore recommend that the petition be denied on its merits.

Dated: June 28, 2013             /s/ Joseph G. Scoville
                                 United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).