UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| FONTRISE CHARLES, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:13-mc-46 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## SECOND REPORT AND RECOMMENDATION

This is a proceeding brought under 26 U.S.C. § 7609(b)(2) to quash an administrative summons dated May 14, 2013, issued by the Internal Revenue Service for customer records of PNC Bank. The matter is before me pursuant to the order of remand issued by United States District Judge Robert Holmes Bell on July 26, 2013. The remand order was issued in response to plaintiff's argument to the District Judge challenging the administrative subpoena on the ground that it was based on two previous "no notice" summonses inappropriately served by the IRS on the bank. The remand order required consideration of two issues: (1) were the two previous "no notice" summonses appropriately issued under the Internal Revenue Code; and (2) if the summonses were improper, does their issuance and use of the information obtained provide sufficient grounds to quash the present IRS summons. (Order at 3, docket # 11). Upon review of the submissions of petitioner and the IRS, I conclude that the two no-notice summonses, although improperly issued, do not provide grounds to quash the summons at issue herein.

## Procedural History

On May 14, 2013, Special Agent Rodney Urlaub issued the IRS summons at issue in the present proceeding. The summons sought account information for two PNC Bank accounts maintained by petitioner, Fontrise Charles. The account information was limited to the period January 1, 2011, through May 13, 2013, the period during which petitioner allegedly filed hundreds of fraudulent tax returns seeking refunds in an aggregate amount of approximately $2 million.

As chronicled in the first report and recommendation (docket # 9), Special Urlaub gave petitioner notice of the summons by sending her a copy by certified mail on May 14, 2013, twenty-five days before the June 7, 2013 return date. Petitioner acknowledged receipt of the summons on the certified mail return receipt. By petition filed May 23, 2013, petitioner sought to quash the May 14, 2013 summons. The petition complained that the copy of the summons served on petitioner was incomplete (¶¶ 7, 8) and that "upon information and belief," the IRS acquired information regarding petitioner's bank accounts from PNC Bank in violation of 12 U.S.C. § 3402, the Right to Financial Privacy Act (¶ 9).

In response to the petition, the United States filed the declaration of Special Agent Urlaub (docket # 7-1) chronicling the steps leading up to the issuance of the summons. According to the declaration, the IRS received hundreds of tax returns filed electronically from the same IP address, each of which was suspected to be fraudulent. Those returns claimed, in the aggregate, approximately $2 million in tax refunds for the years 2011 and 2012. Each return had an attached Form 8888 (Allocation of Refund). The form listed bank routing numbers and account numbers to which the taxpayers directed the deposit of their refunds. Although all the tax returns were allegedly self-prepared, nearly all the 8888 Forms caused the tax refund to be split into different accounts. The

IRS traced $133,000.00 of such deposits to two PNC Bank accounts. At that point, the IRS had only the bank account numbers and had no knowledge concerning the owner of the accounts. Therefore, on April 4, 2013, Special Agent Urlaub issued a "no notice" summons, purportedly authorized by 26 U.S.C. § 7609(c)(2)(C), seeking the name, address, social security number and other identifying information concerning the owner of the bank account ending in 343. PNC Bank responded to the subpoena by identifying petitioner, Fontrise Lenee Charles, doing business as 1 Tax Lady, as the owner. On April 18, 2013, Urlaub issued a second "no notice" summons to PNC Bank for the bank account ending in 839. PNC Bank again responded, identifying petitioner as the account holder. On the basis of the information received by PNC Bank, Urlaub issued the May 14, 2013 administrative summons now at issue.

Pursuant to order of reference, on June 28, 2013, I conducted a hearing on the motion to quash the May 14, 2013 summons. Counsel for petitioner could not articulate any ground to quash the summons under the prevailing Supreme Court standard, as first enunciated in *United States v. Powell*, 379 U.S. 48 (1964). On the same day, I issued a report and recommendation (docket # 9) recommending that the motion to quash be denied.

Petitioner filed objections to the report and recommendation, raising for the first time the alleged impropriety of the two "no notice" summonses. Petitioner argued that the two "no notice" summonses were not authorized by the Internal Revenue Code and that therefore the May 14, 2013 summons was tainted and should be quashed. Judge Bell's order of remand directed me to address this new argument in the first instance. The United States has now responded. For the reasons set forth below, I conclude that petitioner has not established grounds to quash the May 14, 2013 summons.

**Discussion**

I.   **Propriety of "No Notice" Summonses**

The administrative summonses issued by Special Agent Urlaub on April 14 and 18, 2013, are purportedly authorized by the provisions of 26 U.S.C. § 7609(c)(2)(C). This section exempts from the notice requirements otherwise applicable to third-party summonses those summonses "issued only to determine the identity of any person having a numbered account (or similar arrangement) with a bank or other institution . . . ." 26 C.F.R. § 301.7609-2(b)(3) defines such numbered accounts. In its response to the order of remand, the United States concedes that the two PNC accounts maintained by petitioner do not qualify as "numbered accounts" as that term is defined in the Treasury Department's regulations. Consequently, although Agent Urlaub had other legitimate ways to obtain petitioner's identity, his use of a "no notice" summons under section 7609(c)(2)(C) was not appropriate. On this basis, petitioner seeks to quash the May 14, 2013 summons, on the theory that the May 14 summons was issued on the basis of "tainted" information garnered by the special agent by the use of the "no notice" summonses.

II.   **Effect of "Tainted" Information on May 14, 2013 Summons**

Petitioner's challenge to the May 14, 2013 summons is based upon an unstated -- and unsupportable -- assumption. Petitioner's argument must be that an IRS summons must be quashed as "fruit of the poisonous tree" if it is based in any way on information improperly obtained by the IRS agent. This assertion is unsupportable.

Although no reported case discusses the precise issue involved herein, an examination of general principles demonstrates that petitioner is not entitled to the relief she seeks. Almost forty

years ago, the Supreme Court established that the Fourth Amendment does not protect a customer's banking records, as the customer has no reasonable expectation of privacy in bank records. In *United States v. Miller*, 425 U.S. 435 (1976), a criminal defendant moved to suppress copies of checks and other bank records obtained by means of allegedly defective subpoenas served upon two banks. The Fifth Circuit found that a depositor's Fourth Amendment rights are violated when bank records maintained pursuant to the Bank Secrecy Act are obtained by means of a defective subpoena and that any evidence so obtained must be suppressed. 425 U.S. at 437. The Supreme Court reversed, holding that bank records are the property of the bank, not the customer, and that the customer has no legitimate expectation of privacy in such records. *Id.* at 443. "Since no Fourth Amendment interests of the depositor are implicated here, this case is governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued." *Id.* at 444. *Miller*, which has never been overruled or even questioned, firmly establishes that a bank customer has no Fourth Amendment protection for her bank records and that the Constitution is simply not involved when the government procures such records from the bank.

In response to the *Miller* case, Congress passed the Right to Financial Privacy Act, 12 U.S.C. §§ 3401-3422. While acknowledging that the customer has no constitutionally protected privacy interest in bank records, Congress sought to establish some statutory protection on behalf of bank customers. *See* H.R. REP. NO. 95-1383 at 33-34 (1978) *reprinted in* 1978 U.S.C.C.A.N. 9273, 9305-06; *see generally Neece v. Internal Revenue Serv.*, 922 F.2d 573, 574-75 (10th Cir. 1990). The RFPA generally prohibits financial institutions from producing customer records to a government agency except pursuant to consent, search warrant, valid administrative summons, or

other enumerated process designed to allow the customer an opportunity to challenge production of the records prior to their release. *See* 12 U.S.C. § 3402. The RFPA specifically sanctions access to financial records by the government by any of the methods authorized by the Internal Revenue Code. 12 U.S.C. § 3413. The RFPA, therefore, is the *only* source of legal authority restraining the IRS from obtaining a customer's bank records directly from the bank, without appropriate process. *Miller* clearly holds that the Constitution provides no such restraint. The only express restriction is statutory -- the requirement of the RFPA that government agencies may not access information contained in the financial records of any customer except in accordance with the procedures authorized by that Act. 12 U.S.C. § 3403(a). Thus, at most, Special Agent Urlaub's use of an inappropriate IRS summons to obtain petitioner's identity from the PNC Bank was a violation of the RFPA.

The RFPA, under its civil penalties provision, allows for an award of damages against an "agency or department of the United States or financial institution" and provides the financial institution with a good-faith defense. 12 U.S.C. §§ 3417(a), (c). The RFPA provides for disciplinary action against agents or employees of a department or agency for a "willful or intentional violation" of the Act. 12 U.S.C. § 3417(b). The Act goes on to provide that the "remedies and sanctions" for violation of the Act "shall be the only authorized judicial remedies and sanctions." 12 U.S.C. § 3417(d). Relying on this provision, the federal courts universally hold that the damage remedy specified in 12 U.S.C. § 3417(a) is the exclusive remedy against the government and that a violation of the RFPA does not authorize a court to suppress or exclude evidence. *See, e.g., United States v. Daccarette*, 6 F.3d 37, 52 (2d Cir. 1993); *United States v. Davis*, 953 F.2d 1482, 1496 (10th Cir. 1992); *United States v. Kington*, 801 F.2d 733, 737 (5th Cir. 1986); *United States v. Frazin*, 780 F.2d

1461, 1466 (9th Cir. 1986); *United States v. Whitty*, 688 F. Supp. 48, 59-60 (D. Me. 1988). This is but an application of the general rule that suppression of evidence as fruit of the poisonous tree is a remedy only for constitutional violations. *See United States v. McNeal*, 955 F.2d 1067, 1072 (6th Cir. 1992); *accord United States v. Jiminez*, 336 F. App'x 798, 802 (10th Cir. 2009) (the fruit of the poisonous tree doctrine applies only when the defendant has a reasonable expectation of privacy regarding the Fourth Amendment violation which constitutes the poisonous tree). Similarly, the judicially fashioned exclusionary rule generally does not apply to statutory violations, unless suppression is necessary to vindicate some underlying constitutional right. *See United States v. Abdi*, 463 F.3d 547, 555-56 (6th Cir. 2006); *United States v. Orlando*, 281 F.3d 586, 595-96 (6th Cir. 2002) (refusing to suppress tax return information obtained by IRS agent in violation of Internal Revenue Code); *accord United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011) ("In the statutory context, suppression is a creature of the statute, and its availability depends on the statutory text[.]"). Suppression is available only if so provided by the statute, and may not be judicially fashioned. *United States v. Donovan*, 429 U.S. 413, 432 n.22 (1977).

Petitioner's unstated legal theory is that the nexus between the special agent's procuring of petitioner's name in violation of the RFPA and his issuance of the subsequent May 14, 2013 subpoena creates grounds to suppress the subpoena as fruits of the poisonous tree under the doctrine of *Wong Sun v. United States*, 371 U.S. 471 (1963). Under this doctrine, evidence discovered as a direct result of a Fourth Amendment violation may be suppressed, by showing the requisite factual nexus between the illegality and the challenged evidence. 371 U.S. at 485-88. But this remedy is limited to Fourth Amendment violations and is expressly not available as a remedy for violations of the RFPA. Not surprisingly, petitioner has been unable to cite a single decision in

which the courts have found an administrative summons is somehow "tainted" by a previous statutory violation pursuant to which a government agent received information necessary to the issuance of the summons.

The recent decision of the Eleventh Circuit in *United States v. Cray*, 450 F. App'x 923 (11th Cir. 2012), is instructive. *Cray* was a criminal prosecution in which the defendant sought to suppress a search warrant on the ground that the search warrant affidavit was based on Internet subscriber information and bank records that the Government obtained improperly through the use of administrative summonses. Defendant asserted that the summonses violated the RFPA and the Electronics Communication Privacy Act (ECPA) and that this impropriety tainted the search warrant. The Eleventh Circuit found it unnecessary to reach the issue of lawfulness of the administrative summonses, because defendant had no reasonable expectation of privacy in either the bank records or the subscriber information, both of which were in the hands of third parties. 450 F. App'x at 931 (citing *United States v. Miller*, 425 U.S. 435 (1976)). In the absence of a Fourth Amendment violation, suppression is unavailable; the vindication of statutory privacy rights does not warrant suppression, unless authorized by the statute itself: "Regardless of whether the federal agents violated the ECPA or RFPA through their use of administrative summonses, both statutes exclusively authorize civil remedies and do not provide suppression remedies. Thus, Cray must show that the Government's use of his subscriber information and bank records violated the Fourth Amendment to warrant suppression of evidence." *Id.* at 931. As no Fourth Amendment privacy interest attaches to bank records, the alleged taint arising from improper administrative summonses did not warrant suppression of an otherwise valid search warrant.

The only test applied in summons enforcement proceedings by either the Supreme Court or the Sixth Circuit is the test first articulated in *United States v. Powell*, 379 U.S. 48 (1964). Under this test, the government must establish a *prima facie* case for enforcement by demonstrating that its investigation has a legitimate purpose, that the information summoned is relevant to that purpose, that the documents sought are not already in its possession, and that the procedural steps required by the Tax Code had been followed. *See United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 733 (6th Cir. 2006). That showing has been amply made in the present case, and petitioner did not challenge any of the findings made in the previous report and recommendation in this regard. Once the government has made its *prima facie* showing, the burden shifts to the objecting party to disprove the elements of the *prima facie* case or to demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process. *Id.* Petitioner has done neither. Rather, petitioner relies on the agent's use of an inappropriate summons to obtain background information necessary for the issuance of the challenged summons. The burden is on petitioner to show that this somehow invalidates the challenged summons. Petitioner cites no authority to this effect, nor could she, as acceptance of petitioner's argument would require the court to hold that a violation of the RFPA requires suppression of the fruits of subsequent investigatory activities. The "fruit of the poisonous tree" doctrine has never been applied in this context.

**Recommended Disposition**

For the foregoing reasons, I recommend that the petition to quash the May 14, 2013 summons be denied.


Dated:   August 22, 2013                    /s/  Joseph G. Scoville
                                            United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).